No. 22-13279-AA

# United States Court of Appeals
# for the Eleventh Circuit

◆

**PETER OTOH,**

*Plaintiff - Appellant,*

v.

**FEDERAL NATIONAL MORTGAGE ASSOCIATION; NATIONSTAR MORTGAGE, LLC DBA MR. COOPER; NEWREZ, LLC D/B/A SHELLPOINT MORTGAGE SERVICING; AND US BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE FOR VRMTG ASSET TRUST,**
*Defendants - Appellees.*

◆

On Appeal from the United States District Court for the
Northern District of Georgia Case No. 1:22-CV-02488-TCB

◆

## BRIEF OF APPELLEES FEDERAL MORTGAGE ASSOCIATION, NEWREZ, LLC D/B/A SHELLPOINT MORTGAGE SERVICING, AND US BANK TRUST NATIONAL ASSOCIATION AS OWNER TRUSTEE FOR VRMTG ASSET TRUST

◆

Keith S. Anderson
Stephen C. Parsley
Bradley Arant Boult Cummings LLP
1819 5th Avenue North
Birmingham, Alabama 35203
Telephone: (205) 521-8000
kanderson@bradley.com
sparsley@bradley.com

*Counsel for Appellees Federal Mortgage Association, NewRez, LLC D/B/A Shellpoint Mortgage Servicing, and US Bank Trust National Association as owner trustee for VRMTG Asset Trust*

January 4, 2023

CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT

Appellees NewRez, LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint"),
Federal National Mortgage Association ("Fannie Mae"), and US Bank Trust
National Association, not in its individual capacity but solely as owner trustee for
VRMTG Asset Trust ("U.S. Bank Trust") (jointly "Appellees"), pursuant to Federal
Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1, identify below all
trial judges, attorneys, persons, associations of persons, firms, partnerships,
corporations, and other legal entities that have an interest in the outcome of this case,
including subsidiaries, conglomerates, affiliates and parent corporations, any
publicly held company that owns 10 percent or more of a party's stock, and other
identifiable legal entities related to a party.

1. Appellee NewRez, LLC d/b/a Shellpoint Mortgage Servicing is a
   Delaware limited liability company and is a wholly-owned
   subsidiary of Shellpoint Partners LLC, a Delaware limited liability
   company. Shellpoint Partners LLC's members are NRM
   Acquisition LLC and NRM Acquisition II LLC, both of which are
   wholly-owned by New Residential Mortgage LLC, a Delaware
   limited liability company. New Residential Mortgage LLC is a
   wholly-owned subsidiary of New Residential Investment
   Corporation, a Delaware corporation. New Residential Investment

i

Corp. is incorporated in Delaware with its principal place of business in New York. New Residential Investment Corp. is publicly traded on the New York Stock Exchange under ticker symbol "NYSE:NRZ."

2. Appellee Federal National Mortgage Association is presently under the conservatorship of the Federal Housing Finance Agency. Fannie Mae is a private, federally chartered corporation. It does not have a parent corporation, and no publicly held company owns ten percent or more of its stock.

3. Appellee U.S. Bank Trust National Association, not in its individual capacity but solely as owner trustee for VRMTG Asset Trust, is a wholly-owned subsidiary of U.S. Bancorp, which is publicly traded on the New York Stock Exchange under ticker symbol "NYSE:USB."

4. Nationstar Mortgage, LLC d/b/a Mr. Cooper is a Delaware Limited Liability Company. Nationstar is an indirect, wholly-owned subsidiary of Mr. Cooper Group Inc., a Delaware corporation publicly traded on the New York Stock Exchange under ticker symbol "NYSE:COOP." Nationstar is directly owned by two entities: (1) Nationstar Sub1 LLC ("Sub1") (99%) (ticker symbol

"NSM") and (2) Nationstar Sub2 LLC ("Sub2") (1%) (ticker symbol "NSM"). Both Sub1 and Sub2 are Delaware limited liability companies. Sub1 and Sub2 are both 100% owned by Nationstar Mortgage Holdings Inc. ("NSM Holdings") (ticker symbol "NSM"). NSM Holdings is a wholly-owned subsidiary of Mr. Cooper Group Inc. More than 10% of the stock of Mr. Cooper Group Inc. is owned by KKR Wand Investors Corporation a Cayman Islands corporation.

5. Peter Otoh – Pro Se Plaintiff-Appellant

6. Anderson, Keith S. (Attorney for Appellees Shellpoint, U.S. Bank Trust, and Fannie Mae)

7. Parsley, Stephen C. (Attorney for Appellees Shellpoint, U.S. Bank Trust, and Fannie Mae)

8. Bradley Arant Boult Cummings LLP (Law Firm for Appellees Shellpoint, U.S. Bank Trust, and Fannie Mae)

9. Batten, Sr., Timothy C. (United States District Judge)

10. Turner, Casondra (Attorney for Nationstar)

*/s/ Stephen C. Parsley*

Keith S. Anderson
Stephen C. Parsley
Bradley Arant Boult Cummings LLP
1819 5th Avenue North
Birmingham, Alabama 35203
Telephone: (205) 521-8000
Fax: (205) 521-8800
kanderson@bradley.com
sparsley@bradley.com

*Counsel for Appellees Federal Mortgage Association, NewRez, LLC D/B/A Shellpoint Mortgage Servicing, and US Bank Trust National Association as owner trustee for VRMTG Asset Trust*

iv

## STATEMENT CONCERNING ORAL ARGUMENT

Although the Appellees welcome the opportunity to address this Court, they do not believe oral argument is necessary in this appeal. This case concerns the application of well-settled, binding law to undisputed facts. Therefore, the briefs will provide a sufficient basis to affirm the district court's order.

## TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure Statement ................... i

Statement Concerning Oral Argument ..................................................................... v

Table of Citations ............................................................................................... viii

Statement Of Jurisdiction ....................................................................................... xii

Statement Of The Issues ........................................................................................... 1

Statement Of The Case ............................................................................................ 2

I.      Statement of Facts .......................................................................................... 2

        A.      The Loan is issued to Otoh and the Security Deed is assigned
                several times. .................................................................................... 2

        B.      Otoh files for bankruptcy and initiates an unsuccessful adversary
                proceeding. ........................................................................................ 3

II.     Course of Proceedings ................................................................................... 5

III.    Standard of Review ........................................................................................ 6

Summary Of The Argument ..................................................................................... 7

Argument ................................................................................................................. 8

I.      The Appellees Properly Removed the Case to Federal Court. ....................... 8

        A.      The amount in controversy exceeded $75,000.00 .............................. 9

        B.      Each of the defendants was a citizen of a state other than Georgia,
                Otoh's state of citizenship. .............................................................. 12

        C.      Nationstar's consent to notice of removal was effective. ................. 16

II.     The District Court Was Not Required to Convert the Motion to Dismiss
        into a Motion for a Summary Judgment. ...................................................... 19

III.    The District Court's Dismissal on *Res Judicata* Grounds was Correct. ...... 22

IV.  Otoh Does Not Identify Any Errors in the District Court's Rulings that He Failed to State the Elements of His Claims. ...........................................26

    A.  The district court properly understood the discharge letter and "admission" by Nationstar as immaterial to Otoh's claims. ..............26

    B.  Otoh does not demonstrate that any of his claims should have survived the motion to dismiss..........................................................29

Conclusion ...................................................................................................32

Certificate of Compliance ..........................................................................34

Certificate of Service ..................................................................................35

TABLE OF CITATIONS

**Page(s)**

**Cases**

*Americold Realty Tr. v. Conagra Foods, Inc.*,
    577 U.S. 378, 136 S. Ct. 1012 (2016)..........................................................13, 14

*Ames v. JP Morgan Chase Bank, N.A.*,
    298 Ga. 732, 783 S.E.2d 614 (2016) ...........................................................29, 30

*Anderson v. City of Bessemer City, N.C.*,
    470 U.S. 564, 105 S. Ct. 1504 (1985).................................................................8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................................7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 554 (2007)..............................................................................................7

*Bynane v. Bank of New York Mellon*,
    866 F.3d 351 (5th Cir. 2017) .........................................................................13, 14

*Catlin v. United States*,
    324 U.S. 229, 65 S. Ct. 631 (1945)...................................................................23

*Citibank, N.A. v. Data Lease Fin. Corp.*,
    904 F.2d 1498 (11th Cir. 1990) .....................................................................24, 25

*Cortec Industries, Inc. v. Sum Holding L.P.*,
    949 F.2d 42 (2d Cir. 1991) ................................................................................21

*Davidson v. Maraj*,
    609 F. App'x 994 (11th Cir. 2015)....................................................................31

*Demarest v. HSBC Bank USA, N.A., Series 2006-HE2*,
    920 F.3d 1223 (9th Cir. 2019) .......................................................................13, 14

*Doermer v. Oxford Fin. Grp., Ltd.*,
    884 F.3d 643 (7th Cir. 2018) ............................................................................13

*Eggers v. Alabama*,
    876 F.3d 1086 (11th Cir. 2017) ........................................................8

*Ford v. Brown*,
    319 F.3d 1302 (11th Cir. 2003) ......................................................18

*Harrell v. Bank of Am., N.A.*,
    813 F. App'x 397 (11th Cir. 2020) .................................................24

*Hendrix-Smith v. JP Morgan Chase Bank, N.A.*,
    No. 20-10831, 2021 WL 4059784 (11th Cir. Sept. 7, 2021)............30

*Hill v. BellSouth Telecomms., Inc.*,
    364 F.3d 1308 (11th Cir. 2004) ......................................................15

*Lanfear v. Home Depot, Inc.*,
    679 F.3d 1267 (11th Cir. 2012) ........................................................6

*Lowery v. Alabama Power Co.*,
    483 F.3d 1184 (11th Cir. 2007) ......................................................17

*McCulley v. Bank of Am., N.A.*,
    605 F. App'x 875 (11th Cir. 2015) .................................................24

*Navarro Sav. Ass'n v. Lee*,
    446 U.S. 458, 100 S. Ct. 1779 (1980).........................................13, 14

*United States ex rel. Osheroff v. Humana, Inc.*,
    776 F.3d 805 (11th Cir. 2015) ........................................................19

*Otoh v. Barr*,
    No. 1:20-CV-4547-TCB, 2021 WL 1931514 (N.D. Ga. May 6,
    2021) ..................................................................................................4

*Otoh v. Fed. Nat'l Mortg. Ass'n*,
    No. 1:20-CV-475-TCB, 2020 WL 13588345 (N.D. Ga. Mar. 17,
    2020) ..................................................................................................4

*In re Otoh*,
    Case No. 19-61779-bem (N.D. Bkr. Ga. 2019)..................................3

*In re Piper Aircraft Corp.*,
    244 F.3d 1289 (11th Cir. 2001) ......................................................22

*Scimone v. Carnival Corp.*,
    720 F.3d 876 (11th Cir. 2013) ............................................................... 15

*SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*,
    600 F.3d 1334 (11th Cir. 2010) ...............................................................20

*Sierminski v. Transouth Fin. Corp.*,
    216 F.3d 945 (11th Cir. 2000) ................................................................. 9

*Smith Serv. Oil Co. v. Parker*,
    250 Ga. App. 270, 549 S.E.2d 485 (2001) ...............................................31

*Springer v. Wells Fargo Bank, N.A.*,
    784 F. App'x 721 (11th Cir. 2019) ..........................................................11

*Symonette v. Aurora Loan Servs.*,
    LLC, 631 F. App'x 776 (11th Cir. 2015) .................................................24

*Underwriters at Lloyd's, London v. Osting-Schwinn*,
    613 F.3d 1079 (11th Cir. 2010) ...............................................................16

*United States Secs. & Exchange Comm'n v. Carrillo*,
    325 F.3d 1268 (11th Cir. 2003) ...............................................................23

*United States v. Childs*,
    5 F.3d 1328 (9th Cir. 1993) .............................................................11, 12

*United States v. Tinoco*,
    304 F.3d 1088 (11th Cir. 2002) ................................................................ 8

*Universal Express, Inc. v. U.S. S.E.C.*,
    177 Fed. Appx. 52 (11th Cir. 2006).........................................................11

*Waller v. Prof'l Ins. Corp.*,
    296 F.2d 545 (5th Cir. 1961) ...................................................................10

*Wilmington Sav. Fund Soc'y FSB v. Hutchins*,
    No. 21-2094, 2022 WL 1087143 (10th Cir. Apr. 12, 2022)..............................14

**Statutes**

28 U.S.C. § 1332 ....................................................................................... 1

28 U.S.C. § 1332(a) ...................................................................................9

x

28 U.S.C. § 1334(b) ........................................................................22

28 U.S.C. § 1446(b)(2)(A) ...........................................................17

O.C.G.A. § 44–14–162.2(a) ..........................................................30

O.C.G.A. § 44–14–64(c) ...............................................................29

OCGA § 44–14–162.2 ...................................................................30

## Other Authorities

Fed. R. Bankr. P. 8002(a)(1) ...........................................................4

Fed. R. Civ. P. 12(b)(6) ........................................................*passim*

Fed. R. Civ. P. 12(d) .....................................................................19

Fed. R. Civ. P. 56 ...................................................................19, 20

Fed. R. Evid. 201 ..........................................................................11

Fed. R. Evid. 1003 ..................................................................11, 12

Fed. R. Evid. 1005 ............................................................10, 11, 12

## STATEMENT OF JURISDICTION

The district court had subject-matter jurisdiction pursuant to 28 U.S.C. § 1332. The amount in controversy requirement was satisfied because the property at issue was worth over $75,000.00 at the time the complaint was filed. The outstanding principal balance of Appellant Peter Otoh's ("Otoh") loan was $115,189.10 as of July 29, 2019. (Doc. 1-1 at 64). Furthermore, tax assessor records value the real property at issue at $289,900.00 as of June 16, 2022. (Doc. 1-3). There was complete diversity between the plaintiff and defendants. Otoh is a citizen of the State of Georgia. (*See* Complaint (Doc. 1-1) ¶ 1). Shellpoint is a citizen of the States of Delaware and New York for diversity purposes. (Doc. 1 ¶ 12). Fannie Mae is a citizen of the District of Columbia. (Doc. 1 ¶ 13). U.S. Bank is a citizen of the State of Ohio. (Doc. 1 ¶ 14). Finally, Nationstar is a citizen of the States of Delaware and Texas for diversity purposes. (Doc. 1 ¶ 15).

The action was originally filed in state court but removed to the Northern District of Georgia pursuant to 28 U.S.C. § 1441, within 30 days of the filing of the complaint. The Appellees filed the notice of removal, and Nationstar filed a notice of consent. Thus, the removal complied with all jurisdictional requirements.

This Court has appellate jurisdiction under 28 U.S.C. § 158(d) because the appeal concerns a final judgment of the district court. The September 1, 2022, order of dismissal disposed of all claims in the action. (Doc. 23). The clerk's judgment

was entered on the same day. (Doc. 24). Otoh noticed this appeal on September 26, 2022. (Doc. 25).

## STATEMENT OF THE ISSUES

(1)    Did the district court correctly hold that it had subject-matter jurisdiction over this case under 28 U.S.C. § 1332 after finding that none of the defendants is a citizen of the State of Georgia, Otoh's state of citizenship, and that the amount in controversy is over $75,000.00 based on both the outstanding value of the loan and the value of the encumbered real property?

(2)    Did the district court correctly dismiss Otoh's complaint on the basis of *res judicata* because of a prior adversary proceeding in a bankruptcy case that Otoh brought against the preceding servicer and holder of the note, which also sought cancelation of the security interest encumbering the property on the false premise that the loan had been refinanced in 2018?

(3)    Was it correct for the district court to hold that each of Otoh's causes of action failed to state a claim for which relief could be granted?

1

## STATEMENT OF THE CASE

### I.    Statement of Facts

#### A.    The Loan is issued to Otoh and the Security Deed is assigned several times.

Otoh borrowed $138,417.00 from Nationstar Mortgage LLC ("Nationstar") on or about December 20, 2013 (the "Loan"), evidenced by a note of the same date signed by him (the "Note"). (Doc. 1-1, pp. 80-83). The Note was secured by a security deed signed by Otoh (the "Security Deed") that secures real property commonly known as 6645 Princeton Park Ct, Lithonia, Georgia 30058 (the "Property"). (Doc. 1-1, pp. 84-97). The Security Deed was recorded on December 30, 2013, in the DeKalb County deed records at Book 24194, Page 161. (Doc. 1-1, pp. 84-97).

In April of 2018, Otoh applied for a loan modification, and the loan modification agreement was fully executed by Otoh and Nationstar in May of 2018. (Doc. 3-5).

The Security Deed was assigned to Nationstar Mortgage, LLC d/b/a Mr. Cooper on or about June 6, 2019 (the "First Assignment"). The First Assignment was recorded on June 14, 2019, in the DeKalb County deed records at Book 27610, Page 122. (Doc. 1-1, pp. 101-102). On or about November 5, 2021, the Security Deed was assigned to U.S. Bank (the "Second Assignment"). The Second

Assignment was recorded on November 22, 2021, in the DeKalb County deed records at Book 29915, Page 535. (Doc. 3-4).

**B.    Otoh files for bankruptcy and initiates an unsuccessful adversary proceeding.**

On July 31, 2019, Otoh filed a Chapter 7 bankruptcy case in the U.S. Bankruptcy Court for the Northern District of Georgia, (the "Bankruptcy Case"). *In re Otoh*, Case No. 19-61779-bem (N.D. Bkr. Ga. 2019). Otoh filed an adversary complaint in the Bankruptcy Case against Fannie Mae and Nationstar on September 27, 2019, commencing an adversary proceeding docketed as Case 19-05310 (the "Adversary Proceeding"). Otoh filed an amended adversary complaint on November 6, 2019, that sought several forms of relief, including a permanent injunction against foreclosing on the Property, modifications to the Loan repayment plan, and damages for alleged fraud. (Adv. Case 19-05310, Doc. 10). Notably, the amended complaint was based in part on the same theory as this case: that the "Security Deed and Note … are invalid and void" and that Otoh's only obligation is a "2018 Security Deed and Note." (Adv. Case 19-05310, Doc. 10, pp. 4-5).

On January 24, 2020, the bankruptcy court entered an order denying Otoh's request for a preliminary injunction in the Adversary Proceeding. (Adv. Case 19-05310, Doc. 30). In the order, the bankruptcy court expressly rejected Otoh's argument that he had entered into an agreement with Nationstar in 2018 that "constituted a novation of the 2013 Note and Security Deed." (Adv. Case 19-05310,

Doc. 30, p. 2). Instead, the bankruptcy court held that the "agreement was not a novation but merely a modification of the existing loan." (Adv. Case 19-05310, Doc. 30, p. 2).

On September 14, 2020, the bankruptcy court granted Nationstar and Fannie Mae's Rule 12(b)(6) motion to dismiss the adversary proceeding. (Adv. Case 19-05310, Doc. 94). The order reiterated the court's previous finding that "the April 17, 2018, agreement was not a refinancing of Plaintiff's 2013 obligation but was a modification of the 2013 Note and 2013 Security Deed." (Adv. Case 19-05310, Doc. 94, p. 7).

Otoh appealed other rulings of the bankruptcy court to the U.S. District Court for the Northern District of Georgia and then to this Court.[1] However, he never appealed the September 14, 2020, dismissal of the Adversary Proceeding. Thus, it became unappealable on September 19, 2020. Fed. R. Bankr. P. 8002(a)(1) ("a notice of appeal must be filed with the bankruptcy clerk within 14 days after entry of the judgment, order, or decree being appealed.").

---

[1] *Otoh v. Fed. Nat'l Mortg. Ass'n*, No. 1:20-CV-475-TCB, 2020 WL 13588345 (N.D. Ga. Mar. 17, 2020), *appeal dismissed sub nom. In re Otoh*, 844 F. App'x 251 (11th Cir. 2021); *Otoh v. Barr*, No. 1:20-CV-4547-TCB, 2021 WL 1931514 (N.D. Ga. May 6, 2021), *appeal dismissed sub nom. In re Otoh*, No. 21-11608-E, 2022 WL 1566681 (11th Cir. Feb. 7, 2022).

## II.    Course of Proceedings

After the end of Otoh's litigation arising from the Bankruptcy Case, Otoh filed a complaint in the Superior Court of Gwinnett County, Georgia on May 24, 2022. (Doc. 1-1, pp. 02-28). Like the prior Adversary Proceeding, the complaint sought to block foreclosure on the Property. The complaint included seven causes of action: "(1) Injunction to Prevent Threatened Foreclosure; (2) Attempted Wrongful Foreclosure; (3) Fraud; (4) Unjust Enrichment; (5) Cancel 2013 Security Deed and Void or Cancel Assignment of 2013 Security Deed; (6) Punitive Damages; and (7) Temporary Restraining Order and Permanent Injunction." (Doc. 1-1, pp. 02-28). Along with the complaint, Otoh filed an application for a temporary restraining order and preliminary injunction (Doc. 1-1, pp. 29-59).

The Appellees filed a notice of removal on June 22, 2022. (Doc. 1). Nationstar consented to the removal. (Doc. 1-2). The next day, the Appellees moved to dismiss the complaint under Rule 12(b)(6) for failure to state a claim. (Doc. 3). Nationstar filed a separate motion to dismiss on June 29, 2022. (Doc. 9).

On June 30, 2022, Otoh moved to remand the case to state court. (Doc. 11). Otoh denied that Nationstar's citizenship had been properly pled and argued that the absence of an allegation of damages in the complaint meant that the amount-in-controversy requirement could not be satisfied. (Doc. 11, pp. 5-6). In the lengthy

motion, Otoh did not contend that any of the Appellees were citizens of Georgia. (*See* Doc. 11).

The motions to dismiss and remand were fully briefed. On September 1, 2022, the district court entered an order granting the defendants' motions to dismiss and denying Otoh's motion to remand. (Doc. 23). As to the motion to remand, the district court found both elements of diversity jurisdiction were satisfied because: (1) "[a]ll Defendants are citizens of states other than Georgia, and Otoh is a citizen of Georgia" and (2) the outstanding loan balance and the Property's value both were well in excess of $75,000.00. (Doc. 23, pp. 4-5).

As to the motions to dismiss, the district court held that the final judgment in the Adversary Proceeding precluded Otoh's complaint under the doctrine of *res judicata*. (Doc. 23, pp. 8-11). The district court also ruled that each of Otoh's counts failed to state a claim. (Doc. 23, pp. 11-12). The clerk's judgment was entered on the same day. (Doc. 24).

Otoh noticed this appeal on September 26, 2022. (Doc. 25).

## III.  Standard of Review

This Court applies a *de novo* standard of review when reviewing a district court's conclusions of law on a motion to dismiss. *E.g.*, *Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1275 (11th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim

for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## SUMMARY OF THE ARGUMENT

This is likely as straightforward of a case for the application *res judicata* as this Court will ever encounter. All of Otoh's claims in this case were dead on arrival because they were previously adjudicated by the bankruptcy court in the Adversary Proceeding, where he also sought the invalidation of the Security Deed. If any daylight could be found between the claims in this case and the ones in the prior case, they would still be barred as claims that could have been brought previously. And even if those claims were not precluded by *res judicata*, they were due for dismissal under Rule 12(b)(6) because of defects in each cause of action, as the district court correctly held (and Otoh fails to prove otherwise).

Otoh's arguments on subject-matter jurisdiction are just as meritless. His unsupported challenges to the district court's findings of the defendants' citizenship do not come close to showing any error. As to the amount-in-controversy requirement, he cannot wave away the evidence before the district court by merely pointing out that his complaint was vague. Nothing in his opening brief raises a doubt about subject-matter jurisdiction.

7

For all of the above reasons, this Court should affirm the judgment.

ARGUMENT

## I.    The Appellees Properly Removed the Case to Federal Court.

Otoh's challenges to the federal court's subject-matter jurisdiction in this matter lack merit. He does not show any error in the district court's findings of fact as to the parties' citizenship or the amount in controversy. Nor does his argument against Nationstar's consent to removal have any merit.

This Court employs a two-tiered standard of review for the district court's determination of subject-matter jurisdiction. The ultimate question of jurisdiction is considered *de novo*, but "[t]he district court's factual findings with respect to jurisdiction, however, are reviewed for clear error." *United States v. Tinoco*, 304 F.3d 1088, 1114 (11th Cir. 2002). Factual findings may only be overturned under the clear error standard if this Court, "on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Eggers v. Alabama*, 876 F.3d 1086, 1094 (11th Cir. 2017) (citation omitted). The U.S. Supreme Court has clarified that the clear error standard requires affirmance of factual findings if "the district court's account of the evidence is plausible in light of the record viewed in its entirety[.]" *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574, 105 S. Ct. 1504, 1511 (1985).

8

The district court entered factual findings on both elements of diversity jurisdiction. First, it found that there was complete diversity of citizenship because, "[a]ll Defendants are citizens of states other than Georgia, and Otoh is a citizen of Georgia." (Doc. 23, pp. 4). Second, it found that the outstanding loan balance (as evidenced by, among other documents, a debt verification notice that Otoh attached to the complaint, *see* Doc. 1-1, p. 64) and the Property's value (as appraised by the DeKalb County Board of Assessors, *see* Doc. 1-3) both were well in excess of $75,000.00. (Doc. 23, p. 5). In order to prove that diversity jurisdiction is lacking, Otoh must prove that at least one of those factual findings of the district court was in clear error. He fails to do so.

### A.    The amount in controversy exceeded $75,000.00.

Otoh makes a variety of confused attacks on the district court's determination that the amount in controversy exceeded $75,000.00. AOB at 19-20. When considering a motion to remand following removal, the district court could consider "all relevant evidence in the petition for removal and motion to remand[,]" as well as "any manner of proof" relevant to the facts at the time of removal. *Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 949 (11th Cir. 2000)

Diversity jurisdiction requires an amount in controversy of greater than $75,000.00, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a). "[W]hen the validity of a contract or a right to property is called into question in its entirety, the

value of the property controls the amount in controversy." *Waller v. Prof'l Ins. Corp.*, 296 F.2d 545, 547 (5th Cir. 1961). There were two forms of evidence here to support the district court's finding that the amount in controversy exceeded $75,000.00.

*First*, the debt verification notice attached to Otoh's complaint shows the outstanding principal balance alone of the Loan was $115,189.10 as of July 29, 2019. (Doc. 1-1 at 64). Otoh has not disputed the authenticity of this evidence, and cannot, given that he himself attached it to the complaint. In response, however, Otoh says "my Complaint is against USBank Demand letter not Nationstar Demand letter." AOB at 20 (emphasis original). It is not entirely clear what Otoh intends to prove with his reference to that letter, but that letter does not indicate in any way that the unpaid balance of the Loan was below the $75,000.00 amount relevant to the amount in controversy requirement. (Doc. 1-1, pp. 143-146). Indeed, the letter referenced by Otoh does not disclose the Loan balance. Thus, Otoh fails to disprove the relevance of the July 29, 2019, debt verification notice to the amount in controversy. This Court may affirm the district court's finding on that basis alone.

*Second*, records from the tax assessor for the Property show that it was valued at $289,900.00 as of June 16, 2022. (*See* Doc. 1-3). Otoh contends that the screenshot of the tax assessment record should not have been considered because it failed under the requirements of Federal Rule of Evidence 1005. AOB at 19. At the outset, this

argument fails because the Appellees requested that the district court take judicial notice of the tax assessment record (*See* Doc. 1, p. 8 n.2), and as a public record "whose accuracy cannot reasonably be questioned," it was appropriate for judicial notice under Fed. R. Evid. 201. *See Universal Express, Inc. v. U.S. S.E.C.*, 177 Fed. Appx. 52, 53 (11th Cir. 2006) ("Public records are among the permissible facts that a district court may consider" via judicial notice); *Springer v. Wells Fargo Bank, N.A.*, 784 F. App'x 721, 726 (11th Cir. 2019) (taking judicial notice of tax documents found in the public record). Because the tax assessment was taken into judicial notice, the rules governing admission of evidence do not apply.

Even if the district court had admitted the tax assessment as evidence, rather than taken judicial notice, the Appellees were not required to comply with the requirements of Rule 1005. This rule applies when a proponent seeks to "use a copy to prove the content of an official record." Fed. R. Evid. 1005. The Ninth Circuit has explained,

> If the proponent is not attempting to establish the content of the public record as such, but rather is trying to prove the content of the original document regardless of whether or not it is a public record, the rationale behind Rule 1005 does not apply. In that situation it is more appropriate to admit a copy of that document under Rule 1003, the general provision addressing the admission of duplicates, rather than under Rule 1005.

*United States v. Childs*, 5 F.3d 1328, 1335 (9th Cir. 1993). Rule 1003, in contrast provides that "[a] duplicate is admissible to the same extent as an original unless (1)

11

a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original."

Because the Appellees provided the district court with a screenshot of the tax assessment record to prove the value of the Property, rather than to prove the contents of a public record *qua* public record, the district court's admission would be evaluated under Rule 1003, not Rule 1005. *See Childs*, 5 F.3d at 1335. And because Otoh has not questioned its authenticity or explained why it would be "unfair to admit" the screenshot in lieu of the original record, he has not shown there would be any error in admission of the assessment record, if (contrary to the facts) the district court had admitted it as evidence.

Either of the two figures mentioned by the district court – the amount of the Loan secured by the Security Deed or the value of the Property – is well above the amount in controversy needed for diversity jurisdiction. This Court may easily affirm.

### B. Each of the defendants was a citizen of a state other than Georgia, Otoh's state of citizenship.

Otoh also disputes the district court's finding that "[a]ll Defendants are citizens of states other than Georgia[.]" for purposes of diversity jurisdiction. (Doc. 23, pp. 4). Otoh takes issue with the district court's analysis of U.S. Bank and asserts that the district court was required to analyze the citizenship of VRMTG Asset Trust (the "Trust"), of which U.S. Bank is trustee. AOB at 16-19. He then gives a lengthy

12

but mistaken argument that the district court needed to determine the citizenship of all of the Trust's certificate holders. AOB at 16-18.

Otoh's argument fails out of the gate because the Trust is not, and has never been, a defendant in this action. Otoh sued "US Bank Trust National Association, Not In Its Individual Capacity But Solely As Owner Trustee For VRMTG Asset Trust." (Doc. 1-1, pp. 1-3). He could have named the Trust, or both U.S. Bank **and** the Trust, as defendants, but instead named only U.S. Bank. Thus, the district court needed only to evaluate the citizenship of U.S. Bank, not the Trust.

The U.S. Supreme Court has spoken expressly on this point: "when a **trustee** files a lawsuit or **is sued in her own name**, her citizenship is all that matters for diversity purposes." *Americold Realty Tr. v. Conagra Foods, Inc.*, 577 U.S. 378, 383, 136 S. Ct. 1012, 1016 (2016) (emphasis added) (citing *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 462-66, 100 S. Ct. 1779, 1779 (1980)). It is only if "the trust, as an entity, were sued" that the court "need[s] to determine its membership[.]" *Id*. Courts of appeal have understood *Americold* to mean exactly what it says: if a trustee is named as a defendant, the court need only consider the citizenship of the trustee when determining whether it has jurisdiction. *Demarest v. HSBC Bank USA, N.A.*, *Series 2006-HE2*, 920 F.3d 1223, 1228 (9th Cir. 2019); *Doermer v. Oxford Fin. Grp., Ltd.*, 884 F.3d 643, 647 (7th Cir. 2018); *Bynane v. Bank of New York Mellon*,

13

866 F.3d 351, 356 (5th Cir. 2017); *Wilmington Sav. Fund Soc'y FSB v. Hutchins*, No. 21-2094, 2022 WL 1087143, at *2 (10th Cir. Apr. 12, 2022).

Otoh contends that this rule applies only to natural persons, not artificial persons. AOB at 17-18. That is a made-up distinction not found in *Navarro* or *Americold*. While the facts of *Navarro* did involve natural persons as trustees, nothing in the decision limited the rule to natural-person trustees. *See* 446 U.S. at 462-66, 100 S. Ct. at 1779. Nor did *Americold* state such a limitation. *See* 577 U.S. at 383, 136 S. Ct. at 1016. Furthermore, the circuit court decisions discussed in the prior paragraph each applied the *Navarro* rule to national banks serving as trustees for securitized trusts, the same role as U.S. Bank in this matter. *Demarest*, 920 F.3d at 1228-29; *Bynane*, 866 F.3d at 357; *Hutchins*, 2022 WL 1087143, at *2. Otoh has not provided any authority to support a natural-persons-only limitation.

In order to raise the issue of the Trust's citizenship, Otoh would need to make a threshold showing that U.S. Bank was not the "real party to the controversy," *i.e.*, was not, at the time of removal, "[an] active trustee[] whose control over the assets held in [its] name[] is real and substantial[.]" *Navarro*, 446 U.S. at 465, 100 S. Ct. at 1784. Even giving Otoh a generous *pro se* reading, he has not done so either below or in the opening brief. Rather, Otoh's complaint casts U.S. Bank, not the Trust, as the real party in interest; U.S. Bank is (along with Shellpoint) pursuing foreclosure and the party that Otoh alleges should be enjoined. (*See* Doc. 1-1, pp. 11-23). As the

14

plaintiff, Otoh was "the master of the complaint" and "free to avoid federal jurisdiction," *Hill v. BellSouth Telecomms., Inc.*, 364 F.3d 1308, 1314 (11th Cir. 2004), "by structuring [his] case to fall short of a requirement of federal jurisdiction[,] so long as the method of avoidance is not fraudulent." *Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013). After choosing to name U.S. Bank as a defendant in this action, Otoh was bound by the consequences, including removal to federal court under diversity jurisdiction.

In any event, U.S. Bank has filed supplemental allegations of jurisdiction to demonstrate that it is an active trustee, making it the real party in interest and the party whose citizenship counts for the diversity jurisdiction analysis. (*See* Doc. 29). In that filing, U.S. Bank explains that (1) "[t]he Trust is a securitized trust that holds mortgage-backed securities for the benefit of its certificateholders" and (2) "U.S. Bank is the registered agent of the Trust, and, pursuant to the pooling and servicing agreement and all other governing documents, manages the Trust in an active capacity, including the holding, managing, and disposing of assets, as well as having the power to control all litigation involving the Trust." (Doc. 29, p. 2).

To be clear, this supplemental filing expands upon, rather than altering, the jurisdictional allegations in the notice of removal. There, U.S. Bank stated it was the real party in interest and that, as trustee, it was the party whose citizenship counted for the purposes of diversity jurisdiction. (Doc. 1, p. 14-15). It was only in Otoh's

15

reply in support of his motion to remand – not the motion itself – that he first (vaguely) advanced the notion that the citizenship of the certificateholders of the Trust were relevant to the diversity jurisdiction analysis for U.S. Bank. (Doc. 23, pp. 3-4). Because Otoh first raised the issue after U.S. Bank had filed its opposition to his motion to remand, U.S. Bank was not given reason and opportunity to expound on its jurisdictional statements in the notice of removal or to introduce supporting evidence before the district court.

This Court only needs to consider U.S. Bank's citizenship because it, not the Trust, is the party to this case.[2] Thus, Otoh's attempt to sandbag U.S. Bank with a late and completely unsupported jurisdictional argument should be rejected.

## C.    Nationstar's consent to notice of removal was effective.

Otoh's last challenge on subject-matter jurisdiction starts with the baseless premise that Nationstar has not expressly alleged its citizenship. To recap, the notice of removal filed by the Appellees stated that Nationstar "is a Delaware corporation with its principal place of business in Coppell, Texas" and so "is a citizen of Delaware and Texas." (Doc. 1 ¶ 15). Nationstar consented to this notice of removal

---

[2] If this Court still has doubts about U.S. Bank's powers as trustee or other jurisdictional issues, it should hold the appeal in abeyance and remand to the district court for limited proceedings to consider the nature of the Trust and U.S. Bank's powers as trustee. *See Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1093 (11th Cir. 2010) (remanding to the district court for the limited purpose of determining the citizenships of the parties)

via its Notice of Consent to Removal. (Doc. 1-2). While this would seem to settle the issue, Otoh nevertheless denied that Nationstar had alleged its citizenship when he moved to remand the case. (*See* Doc. 11, pp. 5-6). In response, Nationstar informed the district court that the notice of removal was correct – it is a citizen of Delaware and Texas. (Doc. 17, pp. 5-6). Consequently, the district court ruled that Nationstar's citizenship was diverse from Otoh's.

On appeal, Otoh does not introduce any evidence to suggest that Nationstar is not a citizen of Delaware and Texas. He only argues that Nationstar's Notice of Consent to Removal was somehow inconclusive. AOB at 12-13. This argument is easily disposed of. Otoh does not cite any authority that a notice of consent to removal must set out the party's jurisdictional allegations or contain some magic language to "adopt by reference" (AOB at 12) the citizenship allegations in the notice of removal. *See* AOB at 12-13. Furthermore, the removal statute does not contain any specific requirements about the contents of a notice of consent to removal. *See* 28 U.S.C. § 1446(b)(2)(A) ("all defendants who have been properly joined and served must join in or consent to the removal of the action").

The law does not countenance Otoh's attempt to question jurisdiction on such a meaningless technicality. Rather, this Court has held that "[i]n assessing whether removal was proper[,]" the district court should consider "the notice of removal and accompanying documents." *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1213-

14 (11th Cir. 2007). Together, the notice of removal and Nationstar's notice of consent make it quite clear that Nationstar was alleging that it is a citizen of Texas and Delaware.

Otoh also argues for the first time on appeal that "Nationstar's supposed citizenship in the notice of removal is inaccurate and incomplete" based on an alleged "discrepancy" between the Notice of Removal and Nationstar's Certificate of Interested Parties ("CIP"). (AOB at 13). The alleged "discrepancy" is that the CIP states that Nationstar Mortgage Holdings Inc. is a wholly-owned subsidiary of Mr. Cooper Group, Inc., while the notice of removal did not include that part of the corporate family tree. (AOB at 13). The fact that Nationstar's CIP is more detailed than the notice of removal is of no consequence to the question of Nationstar's citizenship. Otoh has not pointed to any evidence, or even alleged, that Mr. Cooper Group, Inc., is a citizen of a state other than Texas or Delaware. This argument is a distraction and does not raise doubts about whether the district court properly found Nationstar is not a citizen of Georgia.[3]

_____

[3] Otoh also argues the case should have been remanded under the *forum non conveniens* doctrine. AOB at 14-15. That doctrine, however, concerns the geographic location of the forum, not whether a state or federal court in the same geographic area will be preferable to the plaintiff. *See, e.g., Ford v. Brown*, 319 F.3d 1302, 1308-09 (11th Cir. 2003) (dismissing case under *forum non conveniens* doctrine and holding that Florida was not appropriate forum for action because the parties, witnesses, and case was factually connected only to Hong Kong and Texas). Otoh's argument that the bankruptcy court's abstention order requires this case to be heard in state court misses the point; his claims have already been heard and

## II.    The District Court Was Not Required to Convert the Motion to Dismiss into a Motion for a Summary Judgment.

Otoh erroneously argues that the Appellees' motion to dismiss triggered Fed. R. Civ. P. 12(d), requiring that "the motion … be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). This rule applies when "matters outside the pleadings are presented to and not excluded by the court." *Id*. Otoh points to two materials reviewed by the district court: the final order in the Adversary Proceeding bankruptcy court and the loan modification agreement (following Otoh's convention, the "LoanModDoc," in the record as Doc. 3-5) that Otoh entered into with Nationstar. AOB at 26-30.

As to the bankruptcy court's order, there is no question that the district court could consider it when deciding the motion to dismiss. It is well-settled that prior orders of a court can be considered upon a motion to dismiss on the basis of *res judicata*. *See, e.g., United States ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 811-12 & n.4 (11th Cir. 2015) (in making *res judicata* determination court may consider documents attached to the complaint and take judicial notice of federal court records of prior proceedings). That is what the district court did here. (*See* Doc.

---

adjudicated, and the district court had no reason to refrain from dismissing this complaint on the basis of *res judicata*.

23 at 8-11). Prior orders of a court are not forms of evidence that need to be evaluated under the Rule 56 standard.

As to the LoanModDoc (Doc. 3-5), Otoh first appears to be arguing that the district court should not have followed the bankruptcy court's order in the Adversary Proceeding because the bankruptcy court "relied on materials that fell outside my pleadings during the [Adversary Proceeding.]" AOB at 27. This is a thinly disguised attack on the bankruptcy court's order, but this Court is not hearing an appeal from the Adversary Proceeding.

Shortly thereafter, Otoh seems to contradict himself, saying "the Bankruptcy court did **not** rely on the LoanModDoc." AOB at 27 (emphasis added). Giving Otoh's argument the most charitable construction, he may be arguing that the district court could not consider the LoanModDoc when ordering dismissal under Rule 12(b)(6). However, Otoh's game of hide-the-ball with the loan documentation fails. While the general rule is that only the "four corners of the complaint" and attached documents should be considered at the motion to dismiss stage, there are two recognized exceptions that allowed the district court to consider the dispositive LoanModDoc despite Otoh's protests.

*First*, a court may consider a document referred to in the complaint which is (1) central to a plaintiff's claim and (2) of undisputed authenticity. *See SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010). This

meets both elements. The loan agreement that took place in 2018 – described by Otoh as a refinance, but clearly a loan modification, as the bankruptcy court and district court concluded – is central to Otoh's claims in the case, and referred to repeatedly in the complaint. (*See* Doc. 1-1, pp. 7-9, 17-19).

It's also authentic; the bankruptcy court reviewed the very same LoanModDoc and found it to be "a modification of the existing loan." (Adv. Proceeding No. 19-05310, Doc. 30, p. 2). While Otoh denies the LoanModDoc is valid (AOB at 25, citing Doc. 28), his argument is nonsensical. He has claimed that his signatures are "forgeries" (Doc. 28 at 2), but as the district court noted, if the "loan modification in 2018 was a forgery, the logical result of that argument would simply be that the 2013 loan and security deed remains in effect." (Doc. 23 at 11). And to be clear, despite litigating in multiple forums for years over the Property, Otoh has never submitted into evidence any "true" copy of the 2018 agreement that would support his position that the parties entered into a refinancing, rather than a loan modification.

*Second*, as the Second Circuit put it, "Plaintiffs' failure to include matters of which as pleaders they had notice and which were integral to their claim—and that they apparently most wanted to avoid—may not serve as a means of forestalling the district court's decision on the motion [to dismiss]." *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 44 (2d Cir. 1991). This Court should not countenance

Otoh's attempt to make allegations about the "refinance" without providing any supporting documentation and then baselessly protest when the Appellees provide the relevant document to the district court.

## III.  The District Court's Dismissal on *Res Judicata* Grounds was Correct.

As the district court held, Otoh's complaint was wholly barred by *res judicata* as a result of the prior adjudication by the bankruptcy court. On September 14, 2020, the bankruptcy court dismissed Otoh's complaint in the Adversary Proceeding. (Doc. 3-6). That order meets all of the criteria for *res judicata*, and so this Court should affirm the district court's dismissal in this case.

The doctrine applies if four elements are satisfied: "(1) the prior decision must have been rendered by a court of competent jurisdiction; (2) there must have been a final judgment on the merits; (3) both cases must involve the same parties or their privies; and (4) both cases must involve the same causes of action." *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1296 (11th Cir. 2001). All four elements are satisfied here.

*First*, it is beyond dispute that the bankruptcy court properly asserted jurisdiction in the Adversary Proceeding. Both the Adversary Proceeding and the Bankruptcy Case as a whole were initiated by Otoh as a case "arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Thus, the matter fell within the subject-matter jurisdiction of the bankruptcy court.

22

*Second*, the bankruptcy court's order dismissing Otoh's amended adversary complaint was in all respects both "final" and "on the merits," as required for the application of res judicata. The order was undoubtedly "final;" it "'end[ed] the litigation on the merits and [left] nothing for the court to do but execute the judgment,'" *United States Secs. & Exchange Comm'n v. Carrillo*, 325 F.3d 1268, 1272 (11th Cir. 2003) (quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S. Ct. 631, 633-34 (1945)).

The bankruptcy court's order rejected each of Otoh's claims on the merits, finding that Otoh had failed to sufficiently allege any basis on which relief could be granted. (*See* Doc. 3-6, pp. 7-13). Otoh makes a cursory, cryptic argument purportedly directed at this element, asserting that the bankruptcy court "did not rule on the validity of the 2013 Security Deed" in the adversary proceeding. AOB at 30-31. However, the bankruptcy court rejected Otoh's claim that the Security Deed had been invalidated by his loan modification, finding that "the April 17, 2018, agreement was not a refinancing of Plaintiff's 2013 obligation but was a modification of the 2013 Note and 2013 Security Deed." (Adv. Case 19-05310, Doc. 94, p. 7). If Otoh has any other argument in mind concerning the Security Deed's validity, it is not apparent what that argument is. Otoh took the position that the Security Deed was originally valid in the complaint, as alleged that he executed the Deed, (Doc. 1-1, pp. 6), and he attached a copy to the complaint. (Doc. 1-1, pp. 84-

23

102). Thus, Otoh has not identified any reason that the order of dismissal in the Adversary Proceeding was not final and on the merits.

*Third*, the identity of parties element is satisfied. Otoh was the complainant in the Adversary Proceeding and in this case. Two of the appellees (Nationstar and Fannie Mae) in this case were defendants in the Adversary Proceeding. Otoh's decision to add two new defendants (U.S. Bank and Shellpoint) in this action does not change the outcome. Nationstar and Fannie Mae, as prior defendants, were necessarily able to argue for dismissal on the basis of *res judicata*. U.S. Bank and Shellpoint, as the assignee of the Security Deed and successor servicer of the Loan, respectively, are in privity with Nationstar and Fannie Mae. *See McCulley v. Bank of Am., N.A.*, 605 F. App'x 875, 878 (11th Cir. 2015) (applying federal law of *res judicata* to hold that mortgagee's successor was in privity with prior mortgagee); *cf. Harrell v. Bank of Am., N.A.,* 813 F. App'x 397, 402 (11th Cir. 2020) (applying Georgia law of *res judicata* to reach same holding); *Symonette v. Aurora Loan Servs.*, LLC, 631 F. App'x 776, 778 (11th Cir. 2015) (reaching same holding under Florida law of *res judicata*)

*Fourth* and finally, the Adversary Proceeding involved the same causes of action that Otoh is pressing in this appeal. "In determining whether the causes of action are the same, a court must compare the substance of the actions, not their form." *Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1503 (11th Cir.

1990). Stated differently, "if a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action, [then] the two cases are really the same 'claim' or 'cause of action' for purposes of *res judicata*." *Id.* Moreover, "*res judicata* applies not only to claims which were actually brought before the previous court, but also to those claims 'which could have been raised in that action.'" *Id*.

Otoh gives the longest of his *res judicata* arguments on this element, disputing the district court's conclusion that the causes of action in the two cases are the same. AOB at 32-36. He sets out the two main tests for comparing causes of action but does not present any argument that disproves the identity of the causes of action. This is not because of a deficiency in Otoh's drafting, but the fact that this task is impossible; he cannot distinguish two cases that sought the same relief on the same basis. Otoh himself recognizes that both cases seek an order to enjoin "permanently" a "foreclosure" on the Property. AOB at 33-34. Additionally, Otoh explicitly premised his claims in the Adversary Proceeding on the theory that the Security Deed and Note were voided by the 2018 loan modification. (Adv. Case 19-05310, Doc. 10 ¶¶ 25-27). This is exactly what he asserts *ad nauseam* in the present case.

The fact that Otoh modified the precise legal theory supporting his claims does not defeat *res judicata*. The same request for relief and same grounds equal the same causes of action under this last element of *res judicata*. *Citibank*, 904 F.2d at

1503 ("if a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action, [then] the two cases are really the same 'claim' or 'cause of action' for purposes of *res judicata*."). This Court should affirm the district court's dismissal.

## IV. Otoh Does Not Identify Any Errors in the District Court's Rulings that He Failed to State the Elements of His Claims.

The district court was also correct to hold that each of Otoh's claims failed for reasons in addition to *res judicata*. Specifically, the district court ruled on the following bases: (1) the 2018 loan modification was not a refinance or novation, (2) Otoh cannot challenge assignments of the Mortgage, (3) the fraud claim was not pled with sufficient particularity, (4) Otoh's unjust enrichment claim fails because the parties' responsibilities are governed by a contract, and (5) a claim for attempted wrongful foreclosure requires more than a statement of the mortgagee's intent to foreclose. (Doc. 23, pp. 11-12). Otoh fails to identify any errors in the district court's ruling.

### A. The district court properly understood the discharge letter and "admission" by Nationstar as immaterial to Otoh's claims.

First, Otoh takes issue with the district court's conclusion that the discharge letter attached to the complaint had been sent by Nationstar for a different loan. AOB at 38-41. The specifics of his argument are hard to follow, but it is summed up by this sentence, "Nationstar sent me a letter that stated without qualification or

26

limitation and without variance of any sort that my loan was paid in full effective December 26, 2013 and that it no longer services my loan." AOB at 41. However, if it is necessary to look for a "qualification" or "limitation" on the scope of the discharge letter, the specific loan number printed on the top right of the first page is sufficient.

The discharge letter references an account ending in -9877 and states that it was paid in full. (Doc. 1-1, p. 139). The number of the Loan at issue in this case, however, ended in -9494. This can be seen on the face of the Note and Security Deed, each of which displays that number in the upper right-hand corner on the first page. (Doc. 1-1, pp. 80, 84). The -9494 loan number is also found on the notice of servicing transfer sent to Otoh when Shellpoint took over servicing of the Loan. (Doc. 1-1, p. 124).[4] Otoh does not – indeed cannot – deny what the documents plainly demonstrate: the discharge letter is not related to the Loan at issue in this matter.

Otoh makes similarly meritless arguments about an alleged "admission" by Nationstar during a bankruptcy proceeding where, according to Otoh, Nationstar took the position that the Loan had been refinanced, rather than modified, in 2013. AOB at 21-23. Essentially, Otoh argues that this "admission" estops Nationstar and

---

[4] All of these documents were attached to Otoh's complaint and so properly considered at the motion to dismiss stage.

the Appellees from stating the truth about the LoanModDoc. However, it is simply not the case that Nationstar took the position in court that that the Loan had been refinanced.

Otoh relies upon a bankruptcy court order summarizing a telephonic hearing in which the bankruptcy judge apparently asked Nationstar's former counsel about specific entries on a loan payment transaction history document. (Doc. 1-1, pp. 111-18). According to the order, during that hearing the "Court asked Defendant's counsel to explain what had transpired and he was unable to do so but did note that the transaction history reflected a 2018 refinancing of the loan." (Doc. 1-1, p. 112). Considering the totality of the circumstances, it would be absurd to construe this summary of a prior hearing as estopping Nationstar or the Appellees from correctly identifying the transaction at issue. The transaction history was a set of business records, but the speaker (an outside counsel) was not a Nationstar custodian of records or other employee qualified to interpret them. Second, the bankruptcy order explicitly states that the attorney was "unable" to explain the shorthand transaction history notes. This indicates that the former counsel's statement that the transaction history demonstrated a 2018 refinancing, was at best, an impromptu guess, not an admission. Finally, the record contains a copy of the LoanModDoc. (Doc. 3-5). It would be nonsensical to ignore the plain meaning of the document because of an order's summary of an uncertain statement by a prior counsel about the Loan

28

transaction history. Nationstar, the Appellees, and this Court are not bound by a statement that is contrary to the clear evidence presented in this matter.

### B. Otoh does not demonstrate that any of his claims should have survived the motion to dismiss.

Otoh attempts to revive multiple claims by repeating arguments concerning the validity of the Security Deed and the alleged "admission by Nationstar." AOB at 41-46. The Appellees have thoroughly explained the defects in Otoh's arguments about the LoanModDoc (*see* Section II) and the discharge letter (*see* Section IV.A), and will not belabor the points.

Next, Otoh contends that he did have standing to challenge assignments of the Mortgage. AOB at 46-48. This is a dispute over a pure issue of Georgia law. Below, both parties cited to *Ames v. JP Morgan Chase Bank, N.A.*, 298 Ga. 732, 783 S.E.2d 614 (2016). That decision clearly supports the district court's ruling that Otoh did not have standing. The *Ames* court recognized that "Georgia statutory law expressly authorizes the assignment of security deeds." 298 Ga. at 738, 783 S.E.2d at 620 (citing O.C.G.A. § 44–14–64(c)). It then invoked the legal principle that, "[t]he assignment of a security deed is a contract between the deed holder and the assignee." *Id.*, 298 Ga. at 739, 783 S.E.2d at 620. Accordingly, the *Ames* court observed that "[t]he typical assignment does not, however, give the debtor any new rights, and the debtor can vindicate all of the rights it had (and continues to have)

under the deed that has been transferred by suing the assignee that claims to have taken ownership of the deed and its corresponding obligations." *Id*.

Otoh hangs his hat on one sentence in the *Ames* opinion, which stated, "It is possible that a debtor could have standing to challenge the validity of an assignment indirectly, if an invalid assignment violated a statutory protection and thereby injured the debtor." 298 Ga. at 740, 783 S.E.2d at 621. This does not help Otoh's cause of action. The *Ames* court discussed the specific statute cited by the debtor – OCGA § 44–14–162.2, a notice statute – and found it did not support a challenge to the assignment. *Id*. This is **the very same statute** to which Otoh appeals, and furthermore, he appears to be making an argument nearly identical to the one rejected in *Ames*. *See* AOB at 48.

In short, Otoh does not challenge whether or not he received the statutorily required notice, but whether the party sending him notice was the true "secured creditor" within the meaning of O.C.G.A. § 44–14–162.2(a). However, as the *Ames* court noted, "[t]he statute, however, does not require the party giving notice to prove that it is the secured creditor." 298 Ga. at 741, 783 S.E.2d at 621. Thus, neither *Ames* nor O.C.G.A. § 44–14–162.2(a) provides Otoh an avenue to challenge any assignment of the Security Deed. *See also Hendrix-Smith v. JP Morgan Chase Bank, N.A.*, No. 20-10831, 2021 WL 4059784, at *2 (11th Cir. Sept. 7, 2021) (Georgia law does not provide borrowers standing to challenge assignments of security deeds).

30

Relatedly, Otoh asserts that he sufficiently alleged a fraud claim by asserting that the assignment of the Security Deed to U.S. Bank was fraudulent. AOB at 49-51. However, as stated above, Georgia law does not allow a borrower to challenge assignments of security deeds. The argument further fails because this is an argument with no factual support; once again, he refers only to the Nationstar discharge letter that was in reference to a different account, not the Loan, and the "admission" by Nationstar's counsel at a bankruptcy hearing, which is of no legal significance.

Otoh then disputes the district court's grounds for dismissing his unjust enrichment claim, *i.e.*, that the law does not allow an unjust enrichment claim when there is a contract between the plaintiff and defendant. AOB at 52-54. He does not dispute the legal principle itself, which is well-settled. *Davidson v. Maraj*, 609 F. App'x 994, 997 (11th Cir. 2015) (an unjust enrichment cause of action is not "available when an express contract exists governing all the claimed rights and responsibilities of the parties.") (citing multiple Georgia Court of Appeals' decisions); *Smith Serv. Oil Co. v. Parker*, 250 Ga. App. 270, 549 S.E.2d 485, 487 (2001) ("The theory of unjust enrichment applies **when there is no legal contract** and when there has been a benefit conferred which would result in an unjust enrichment unless compensated.") (emphasis added). Instead, Otoh denies that there is a "legal contract between me, Fannie Mae, Nationstar, USBank, Shellpoint and

31

Auction.com." AOB at 52. This is confused. Otoh is in a legal contract (the Loan) with U.S. Bank and Shellpoint, and previously Fannie Mae and Nationstar, respectively, occupied those same contractual positions. What Auction.com has to do with this is unclear, since Otoh did not name Auction.com as a defendant.

It is plain that each of Otoh's attempts to revive his claims[5] are utterly without merit. This Court should have no hesitation about affirming the district court's order of dismissal.

## CONCLUSION

For the reasons given above, this Court should affirm the district court's order dismissing the complaint.

---

[5] As the district court noted, Otoh's counts for "punitive damages" and "temporary restraining order and permanent injunction" are not true causes of action, but merely requests for additional remedies. (Doc. 23, p. 12). Therefore, although Otoh discusses those counts in the opening brief (AOB at 54-57), they have no independent viability and fall along with his substantive causes of action.

Respectfully submitted this 4th day of January, 2023.

> *s/ Stephen C. Parsley*
> Keith S. Anderson
> Stephen C. Parsley
> Bradley Arant Boult Cummings LLP
> 1819 5th Avenue North
> Birmingham, Alabama 35203
> Telephone: (205) 521-8000
> kanderson@bradley.com
> sparsley@bradley.com
>
> *Counsel for Appellees Federal Mortgage*
> *Association, NewRez, LLC D/B/A*
> *Shellpoint Mortgage Servicing, and US*
> *Bank Trust National Association as owner*
> *trustee for VRMTG Asset Trust*

33

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 32(a)(7)(B) because it contains 7,760 words, excluding the parts of the brief exempted by 11th Cir. R. 32-4.

2.      This brief complies with the typeface requirements of 11th Cir. Rule 32-4 and Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

*s/ Stephen C. Parsley*
Of Counsel

CERTIFICATE OF SERVICE

I hereby certify that on January 4, 2023, I electronically filed the foregoing

with the Clerk of the Court for the United States Court of Appeals for the Eleventh

Circuit using the Appellate Electronic Filing system and mailed the required number

of copies via first-class mail to:

Peter Otoh
6645 Princeton Park Ct
Lithonia, GA 30058

s/ Stephen C. Parsley
Of Counsel